# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

MATTHEW JAMISON,              )
#267844,                      )
                              )    CIVIL ACTION NO. 9:15-2859-MBS-BM
                  Petitioner, )
                              )
v.                            )    **REPORT AND RECOMMENDATION**
                              )
LEVERN COHEN,                 )
                              )
                  Respondent. )
_____ )

     Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The original petition was filed pro se on July 14, 2015.[1]

     The Respondent filed a return and motion for summary judgment on December 14, 2015 and an Amended Answer on December 15, 2015.  As the Petitioner is proceeding pro se, a Roseboro order was filed on December 15, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment.  Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case.  After receiving an extension of time to respond, Petitioner filed a memorandum in opposition on January 15, 2016.

---

[1]Filing date pursuant to Houston v. Lack, 487 U.S. 266, 270-276 (1988).



This matter is now before the Court for disposition.[2]

## Procedural History

Petitioner was indicted in Richland County in October 2000 for the murder of a fifteen year old [Indictment No. 2000-GS-40-53234]. (R.pp. 265-267).[3] Petitioner was represented by John Delgado, Esquire. On August 27-28, 2001, Petitioner plead guilty to the lesser-included offense of voluntary manslaughter and was sentenced to twenty (20) years imprisonment.[4] (R.pp. 1-38). Petitioner did not appeal the plea and/or sentence.

On June 24, 2002, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court; Jamison v. State of South Carolina, No. 2002-CP-40-3078; raising the following issue:

**Ground One**: Ineffective Assistance of Counsel.

See Court Docket No. 19-8, p. 41.

Petitioner was represented in his APCR by Melissa Kimbrough (Armstrong), Esquire, and an evidentiary hearing was held on Petitioner's application on April 27, 2005. (R.pp. 39-87). The PCR judge thereafter issued an order filed July 13, 2005 (dated July 7, 2005), denying relief on the APCR in its entirety. See Court Docket No. 19-8, pp. 100-104.

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Unless otherwise noted, record cites refer to Court Docket No. 19-16.

[4]The state court took the Petitioner's plea on August 27, 2001. The sentencing was held on August 28, 2001 so the victim's family members could attend. (R.p. 4).



2

on appeal by Robert M. Pachak, Appellate Defender of the South Carolina Office of Appellate Defense, who filed a <u>Johnson</u>[5] petition requesting to be relieved and raising the following issue:

> Whether Petitioner's guilty plea complied with the mandates set forth in <u>Boykin v. Alabama</u>?"

<u>See</u> Petition, p. 2 (Court Docket No. 19-1, p. 3).

Petitioner also submitted a <u>pro se</u> response to the <u>Johnson</u> petition raising the following additional issues:

> **Ground One**: Whether Petitioner's trial counsel properly investigated all the facts in relation to Petitioner's guilty plea and as a result of such failure renders Petitioner's guilty plea invalid.
>
> **Ground Two**: Whether Petitioner's appellate counsel failure to obtain the complete record from below and/or from PCR counsel renders appellate counsel's assistance ineffective.
>
> **Ground Three**: Whether the Court should remand Petitioner's case back to the lower court for a hearing to ascertain the validity of the after discovered evidence which could not have been discovered by trial counsel nor Petitioner prior to trial nor sentencing through due diligence.

(R.p. 215).

Petitioner also filed a supplement to his <u>pro se</u> <u>Johnson</u> petition requesting to include a document from America's Private Investigation Network, Inc.  <u>See</u> Court Docket No. 19-2.

On March 6, 2007, the South Carolina Court of Appeals denied Petitioner's writ of certiorari and granted counsel's request to be relieved.  (R.p. 221).  Petitioner filed a Petition for Rehearing and Rehearing En Banc pursuant to Rule 221 SCACR, but the South Carolina Court of Appeals denied the petition for rehearing on April 24, 2007.  (R.pp. 222-225).  The Remittitur was

---

[5]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders v. California</u>, 386 U.S. 744 (1967).

3



sent down on June 4, 2007.  See Court Docket No. 19-7.

In the interim, while his first APCR was still pending, Petitioner filed a second APCR on November 28, 2006; Jamison v. State of South Carolina, No. 2006-CP-40-7024.  (R.pp. 88-97). In this application, Petitioner asserted:

> Applicant has discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(e) to include other findings by the Court.

(R.p. 90).  Petitioner included an Affidavit from Theotis Bellamy with this Petition, in which Bellamy attests that Petitioner was acting in self-defense when the shooting occurred.  (R.p. 93).  Petitioner also, through appointed counsel Charles T. Brooks, filed an Amendment to this APCR on September 21, 2007.  (R.pp. 98-100).

An evidentiary hearing was held on the matter on June 27, 2008.  (R.pp. 105-188). Petitioner was represented by Tommy Thomas and Tricia Blanchette.  On June 30, 2008, the PCR court issued a memorandum order granting the Petitioner relief.  (R.pp. 197-201).  However, on July 2, 2008, the State submitted a post-hearing motion captioned "Motion to Supplement Record and/or Motion for Rehearing Pursuant to Rule 59(e), SCRCP and/or Rule 59(e), SCRCP Motion to Alter or Amend"; (R.pp. 202-225); and in an order dated August 15, 2008 (filed on August 18, 2008), the PCR court withdrew its order granting relief and ordered a re-hearing.  (R.pp. 229-230).  A hearing on the State's Motion to Reconsider was thereafter held on September 24, 2008; (R.pp. 231-247); following which the PCR court issued an order denying the State's motion for reconsideration on September 24, 2008.  (R.p. 248).  The final order granting Petitioner's APCR was then filed on October 14, 2008, granting Petitioner relief.  (R.pp. 249-263).

The State filed an appeal raising the following issues:



4

> **Ground One:** Whether the PCR court erred because an issue presented in a pro se Johnson response during a prior PCR appeal cannot, for the purposes of a subsequent/successive PCR, be newly discovered evidence per Rule 17-27-45(C)?
>
> **Ground Two**: Whether the PCR court erred by finding a witness' testimony is newly discovered when that witness admits they would have originally refused to testify/cooperate?
>
> **Ground Three:** Whether the PCR court erred by finding that testimony was "newly discovered" when everything the witness testified to was known all along?
>
> **Ground Four:** Whether the PCR court erred by granting relief because the Bellamy testimony, if believable, establishes that there was no sufficient legal provocation - by the victim - to warrant a manslaughter charge?
>
> **Ground Five:** Whether the PCR court erred because self-defense is not a valid defense when an innocent 3rd party victim is killed?
>
> **Ground Six:** Whether the PCR court erred by granting relief because the self-defense claim, as argued, is invalid because it was a disproportionate response?

(R.pp. 279-280).

Petitioner filed a response in opposition dated August 20, 2009 (R.pp. 302-322).  The case was transferred to the South Carolina Court of Appeals from the South Carolina Supreme Court, and the Court of Appeals directed the parties to address issues 1-4 as well as the following issue:

> Did the Respondent's guilty plea constitute a waiver of the defense of self-defense at trial and, therefore, did the PCR court err in granting Respondent a new trial?

(R.pp. 323-324).

The parties filed briefs addressing the matter; (R.pp. 325-387); and on July 18, 2012, the South Carolina Court of Appeals issued an opinion in which it affirmed the decision of the PCR court vacating Petitioner's August 27, 2001 guilty plea. Jamison v. State, Unpub. Op. No. 2012-UP-437 (S.C. Ct.App. filed July 18, 2012).  (R.pp. 388-390).  A petition for rehearing was filed on July 27, 2012; (R.pp. 391-395); and was denied on August 22, 2012.  (R.p. 396).



The South Carolina Supreme Court granted certiorari [Court Docket No. 19-9], following which the State filed its petition addressing the following issues:

**Argument One**: Whether the Court of Appeals and the PCR court erred because an issue presented in a *pro se* Johnson response during a prior PCR appeal cannot, for the purposes of a subsequent/successive PCR, be newly discovered evidence per S.C. Code § 17-27-45(c)?

**Argument Two:** Whether because a guilty plea is a waiver of defenses, the Court of Appeals erred by not reversing the PCR court's order granting relief when the order was based on an error of law?

See Court Docket No. 19-10, p. 5.

On October 22, 2014, the South Carolina Supreme Court reversed the South Carolina Court of Appeals' decision and reinstated the Defendant's conviction and sentence. See, Court Docket No. 19-12.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One**: Denied the Actual Effective Assistance of Criminal Defense Counsel.

**Supporting Grounds**: Petitioner engaged an involuntary guilty plea where trial counsel pressured guilty plea by promise of 11-13 year(s); counsel stated petitioner faced death penalty at trial.

**Ground Two**: Due Process Violation.

**Supporting Grounds:** Jamison's 2nd APCR raised the issue of after-discovered evidence which related to the aspect of asserting self-defense against a homicide offense; the South Carolina Supreme Court changed the criteria as his conviction was acquired by guilty plea to voluntary manslaughter. Jamison v. State, 765 S.E.2d 123 (2014). The Court adopted the "interest of justice" test over the "traditional" test and applied it retroactively contrary to Tulley v. State, 640 S.E.2d 878, 881 (2007) decision.

**Ground Three**: Denied Due Process and Equal Protection of the law (under Full and Fair Hearing Doctrine of Rule) in State Court.



Petitioner has set forth the 2nd APCR was granted in the trial court on the "traditional" test of after-discovered evidence and South Carolina Supreme Court changed the relevant discovery rule (criteria) to "the interest of justice" test while applying the new rule retroactively and not allowing his issue or appeal to be remanded to the trial court for application of the new rule to weight [sic], determine the evidence contrary to <u>TEAGUE</u> rule.  So he was denied the full and fair opportunity along with hearing in the state court(s).

<u>See</u> <u>Petition</u>, pp. 6, 8-9.

### **Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11.  Further, while the federal court is charged with liberally construing  pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case;  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

### **I.**

In Ground One, Petitioner asserts that guilty plea was involuntary due to trial counsel pressuring him to plead guilty by promising him a sentence of 11-13 year(s) and threatening him with the death penalty at trial.  This claim was addressed both in Petitioner's first PCR proceeding, where he had the burden of proving the allegations in his petition; <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert.</u> <u>denied</u>, 474 U.S. 1094 (1986); as well as on appeal to the State Court of Appeals.  (R.pp.



221, 223-225). The PCR court rejected this claim, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Jamison v. State of South Carolina, No. 2002-CP-40-3078; Court Docket No. 19-8, pp. 100-104.

Specifically, the PCR judge found that: 1) due to the schedule of his trial counsel (Delgado), he was called to testify first; 2) Delgado testified that he represented the Petitioner on the charge of murder; 3) Delgado testified that he met with the Petitioner several times, that he went over the charges and their elements and maximum and minimum penalties with him, and went over the discovery ; 4) Delgado testified that he hired a private investigator to work on this case and that several issues were explored by the defense, including the fact that there was forensic evidence of gun-shot residue on the back of the victim's hand; 5) counsel testified that it was asserted by the forensic expert that the position of the GSR on the back of one of the victim's hands was consistent with a blocking pose at the time of a close-range shot; 6) counsel testified that on August 20th, eight days prior to the plea, the solicitor handling the case called him with an offer of voluntary manslaughter for twenty years; 7) he communicated this offer to the Petitioner, discussed the pros and cons of pleading versus going to trial, and what his rights were; 8) Delgado testified that he was preparing to go to trial and would have gone to trial had his client wanted to, but that the Petitioner ultimately decided to plead to voluntary manslaughter with a twenty year sentence; 9) Delgado testified that he remembered discussing the possibility of the death penalty with the Petitioner, what the solicitor would have to do to seek the death penalty, and the solicitor's chances of being successful, but that he never threatened the Petitioner that if he did not plead he would get death;

10) Petitioner then took the stand and testified that he felt that he had been forced to plead guilty and that his plea was not freely and voluntarily entered; 11) Petitioner testified that



Delgado told him that he would get the death penalty if he did not plead guilty; 12) Petitioner testified that he would not have pled guilty if he had not been told that; 13) Tammy Porterfield testified that she was Petitioner's girlfriend; 14) she testified that she was present at a meeting on the day of the plea where Petitioner and Delgado discussed his case; 15) she testified that she heard Delgado tell the Petitioner that he might get the death penalty if he did not plead guilty; 16) Clifford Haltiwanger testified that he was Petitioner's cousin and was present in the same meeting; 17) he testified that he also heard Delgado tell the Petitioner that he may get the death penalty if he proceeded to trial rather than plead; 18) Angie Jamison, Petitioner's sister, also testified that she was present during the same meeting and that she heard Delgado tell the Petitioner that he may get the death penalty if he did not plead guilty;

19) the PCR Court found the testimony of Petitioner's counsel more credible than that of the Petitioner or his family and girlfriend, especially as to the issue of the discussion of the death penalty; 20) the Petitioner was accurately and sufficiently advised as to the advantages and disadvantages of pleading guilty and Petitioner pled guilty freely and voluntarily and obtained a benefit as a result; and 21) the Petitioner failed to carry his burden in his APCR.  See Court Docket No. 19-8, pp. 100-104.

Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue



9

made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Even so, with regard to the ineffective assistance of counsel claim that was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claim.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland,

10



the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

       Here, after careful review of the record and the arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under the standard of Strickland and Hill, or that his guilty plea was not voluntarily and knowingly entered. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. A review of the record confirms that at Petitioner's guilty plea, Petitioner's counsel represented to the court that he had advised Petitioner of the charge in his indictment, the possible punishment, his rights (including his right to a jury trial), and that Petitioner understood these rights. (R.pp. 4-5). Petitioner also confirmed to the Court that he understood these matters and rights. (R.pp. 8-9). Petitioner's counsel and Petitioner further confirmed that Petitioner wished to plead guilty to the charge of voluntary manslaughter. (R.pp. 5, 10). In doing so, the Petitioner confirmed to the court that he understood that he could be sentenced to up to thirty (30) years on the voluntary manslaughter charge and that he would be required to serve at least 85% of the sentence imposed on him before he would be eligible for parole. (R.pp. 10-11). Petitioner also testified that he understood

11



that the judge could impose any sentence to run consecutive to the sentence that Petitioner was currently serving.[6]  (R.pp. 14-15).  Petitioner also confirmed that he understood that he was giving up his right to remain silent, his right to a jury trial including that he would be presumed innocent in that trial and the State would have to prove its burden beyond a reasonable doubt, that although he was not required to do so that he had the right to present evidence in his trial, that the jury's decision would have to be unanimous, and his right to confront witnesses and to call witnesses on his behalf at trial.  (R.pp. 12-13).  Petitioner then reaffirmed that he wished to give up all of these rights and to enter a plea of guilty to the voluntary manslaughter charge.  (R.pp. 13-14).

The Petitioner then confirmed that he understood that by pleading guilty he was admitting the truth of the allegation contained in the indictment against him; specifically, that he had a gun, shot the victim, and the victim had died.  (R.pp. 15-16, 20-21).  The plea court also affirmed that Petitioner understood that he may have some defenses to the charge, but that by pleading guilty he was giving up those defenses.  (R.pp. 15-17).  Petitioner testified that no one had promised him anything or held out any hope of reward in order to get him to plead guilty, and that no one had threatened him, used force, pressured or intimidated him to get him to plead guilty.  Petitioner testified that he had had enough time to make up his mind as to whether or not to plead guilty, and that he was pleading guilty of his own free will and accord.  (R.p. 17).  Petitioner also testified that he was satisfied with the manner in which his counsel had represented him, that he had talked with him as long and for as often as he felt it necessary to properly represent him,  that he did not need any more time to talk to him, and that he understood their talks.  (R.pp. 18-19).  Petitioner then testified

---

[6]Petitioner was at that time already serving a fifteen (15) year sentence, suspended to eight (8) years with five (5) years probation.  (R.p. 14); see also (R.p. 25).



that he felt that his counsel had done everything for him that he should have or could have done in advising and representing him, that counsel had not done anything that he thought that he should not have done, and that he was completely satisfied with counsel's services. (R.p. 19).

However, notwithstanding this record and Petitioner's statements at his plea, at his PCR hearing Petitioner testified that his plea counsel had told him that the most he would get was 11 to 13 years. (R.pp. 66-67). Petitioner also testified when asked if counsel ever told him that his plea to voluntary manslaughter exposed him to thirty (30) years, that "No. He ain't never spoke that to me." (R.p. 67). Petitioner also testified that "the only reason I even pleaded was because he telling me I'm going to get the death penalty. It ain't like he gave me no options saying that, well, you can go [sic] the trial and this, this, this or, you know what I'm saying. Nah. If we go to trial, you're going to get the death penalty." (R.p. 69). When Petitioner was questioned about the truthfulness of his testimony at his guilty plea, Petitioner testified "[w]ell, as far as them talking about did anybody promise me nothing; oh, that's not truthful." (R.p. 73).

After careful review of this record, the undersigned finds that Petitioner has failed to establish that he was improperly advised of the sentence he was facing. The PCR court found Petitioner's counsel credible on this issue and that Petitioner was not credible, findings that are entitled to substantial deference on habeas corpus review. Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."]. While a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings



(assuming that were to be the case). Further, given the deference due the state court's findings on this credibility issue, Petitioner has not shown that the state court's findings were unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]; Evans, 220 F.3d at 312; see Seymour v. Walker, 224 F.3d 542, 553 (6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under [the] AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."].

   In addition to the PCR court's finding that Petitioner was properly advised by counsel, it is in any event clear from the record of Petitioner's plea proceeding that the plea court itself also went over the facts of the case, Petitioner's rights prior to the acceptance of the plea, and potential sentences, following which Petitioner admitted he had committed the crime and entered his plea of guilty. Cf. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995)[recognizing that "any misinformation [Petitioner] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [Petitioner] was not prejudiced."]; United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)["[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant."]; Pittman v. South Carolina, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant,



14

between the Court and defendant's counsel, or both."] (citing State v. Ray, 427 S.E.2d 171, 174 (S.C. 1993)); see also State v. Lambert, 225 S.E.2d 340 (1976); Roddy v. South Carolina, 528 S.E.2d 418, 421 (S.C. 2000). See Sargent v. Waters, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute."](quoting Marshall, 459 U.S. at 431-432).

Petitioner has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. Therefore, there is nothing reversible in the state court's findings based on the record of this case, and Petitioner has failed to establish that his counsel was ineffective or that his plea was involuntary because he was "coerced" into pleading guilty due to a promise of a certain sentence or the threat that he was facing the death penalty. Evans, 220 F.3d at 312. Criminal defendants often make the decision to plead guilty based on a likelihood of conviction at trial, and although Petitioner now claims that his plea was based on alleged promises or threats made by his counsel, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d. 167, 171 (4th Cir. 1981).



Here, Petitioner readily admitted his guilt, and he has failed to show his counsel was ineffective under the standards discussed hereinabove. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; see also Wade v. State, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; Hill, 474 U.S. 52 [Where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial]. Accordingly, Petitioner has failed to show deficient performance or prejudice on trial counsel's part. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. This issue is therefore without merit and should be dismissed.

## II.

In Grounds Two and Three, Petitioner claims that he was denied due process and equal protection by the state Supreme Court's alleged retroactive application of the "interest of justice" analysis to his after-discovered evidence. The after-discovered evidence at issue is the testimony from Bellamy that, at the time of the shooting, Petitioner was acting in self-defense against an individual known as "Jig" (not the victim).

At Petitioner's PCR hearing, Bellamy testified that he had not come forward sooner because he knew that Jig and "his group of people" were dangerous, that they were capable of hurting someone, and that Jig had made threats on Bellamy's brother. (R.pp. 141-142). However, Bellamy testified that since Jig was now in jail on unrelated charges, he felt comfortable coming forward. (R.p. 143). Bellamy testified to an incident prior to Petitioner shooting the victim where Jig had assaulted Petitioner's sister, accidentally hit Petitioner's baby in the eye, had beaten Petitioner, and



shot at Petitioner while Petitioner was attempting to flee. (R.p. 144). Then, at a later point in time at the National Guard Armory, Bellamy testified that he witnessed Jig and them "approach [Petitioner] like they're fixing to, you know what I'm saying, like they're fixing to pull out weapons or whatever like that, right." (R.p. 146). Bellamy testified that Petitioner then shot at Jig to "defend himself", and that Jig had pulled the victim to use as a shield. (R.p. 147).

However, there is no evidence of another weapon being involved as part of this shooting; rather, according to Bellamy's testimony Petitioner acted in self-defense because he was in fear of an assault from Jig, speculating that Jig was going to harm Petitioner with or without a weapon. (R.pp. 146-147). Further, this contention was already argued at the plea hearing by defense counsel, who told the Court:

> [Petitioner] had no individual animus against [the Victim]. [The Victim] was standing with a group of folks that had been engaged with [Petitioner] some time in the past and that night as well and he fired towards that crowd because he thought that they were coming at him and he was coming at them.
>
> And he understands the aspect we know in the law as transferred intent.[7] It was not a self-defense. It may have been a very imperfect self-defense. But those are the issues that we would have brought forward. But he had no individual animus. He had no reason. Didn't even know this boy. It was a shot at a crowd of people in a very crowded environment in which this young man was struck and killed and died as a result.

(R.pp. 31-32).

Moreover, it must be noted that the plea court specifically warned Petitioner at his plea hearing that, by pleading guilty, he was waiving and giving up any defenses that he may have. (R.p. 15). Cf.

---

[7]A legal theory under which a defendant who injures an innocent third party while attempting to defend himself from bodily harm is absolved from liability. Also known as "transferred self-defense", this theory is not recognized in South Carolina. Jamison v. State, 765 S.E.2d 123, 130 (S.C. 2014); State v. Porter, 239 S.E.2d 641 (S.C. 1977); Moulton v. Cartledge, No. 14-2666, 2015 WL 2357263 at ** 1, 13 (D.S.C. May 15, 2015).



Rivers v. Strickland, 213 S.E.2d 97, 98 (S.C. 1975)["The general rule is that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses"]; State v. Passaro, 567 S.E.2d 862, 866 (S.C. 2002)[Same]; State v. Oleary, 393 S.E.2d 186, 187 (S.C. 1990)["impermissible for a defendant to preserve constitutional issues while entertaining a guilty plea; the trial court may not accept the plea on such terms"]. Therefore, Petitioner had a high burden to meet to obtain relief on this claim. Jamison, 765 S.E.2d at 130 ["[I]t will be the rare case indeed where the interests of justice will require that a knowing and voluntary guilty plea be vacated through post-conviction relief on the basis of newly discovered evidence, for an unconditional guilty plea involving an admission of guilt and a waiver of trial and all defenses will generally preclude any subsequent challenge to factual guilt"]. The State Supreme Court found that Bellamy's testimony, which did not even address some new defense that Petitioner did not know he had at the time of his plea, but simply supported a defense Petitioner already knew he could assert but chose to waive as part of his plea, did not meet this high standard. The undersigned can discern no federal violation in this finding. Evans, 220 F.3d at 312; see also Herrera v. Collins, 506 U.S. 390, 400 (1993)["Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."]

   With regard to Petitioner's argument that the state court erred in applying the "interest of justice" test rather than the "traditional test" in its evaluation of this claim,[8] the South Carolina

---

  [8]The "traditional" test for after discovered evidence requires the party to show that the evidence 1) would probably change the result if a new trial is had, 2) has been discovered since trial, 3) could not have been discovered before trial, 4) is material to the issue of guilt or innocence, and 5) is not merely cumulative or impeaching. See Court Docket No. 19-12, p. 9. The "interest of (continued...)



Supreme Court discussed which test should apply and determined that "the traditional, newly discovered evidence factors are 'difficult, if not impossible to apply when the moving party pleaded guilty instead of standing trial.'" Jamison, 765 S.E.2d at 130 (quoting In re Reise, 192 P.3d 949, 954 (Wash.Ct.App. 2008)).  The state Supreme Court also found that it was guided by the language of S.C. Code § 17-20-20(A)(4) and held,  "[w]hen a PCR applicant seeks relief on the basis of newly discovered evidence following a guilty plea" . . . that "a PCR applicant may successfully disavow his or her guilty plea only where the interests of justice outweigh the waiver and solemn admission of guilt encompassed in a plea of guilty and the compelling interests in maintaining the finality of guilty-plea convictions."  Id.  While Petitioner obviously disagrees with this decision, the state court's application of the "interest of justice" test to newly discovered evidence in a guilty plea case is a decision of state law, and it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ["federal habeas corpus relief does not lie for errors of state law"]; cf. Napier v. Ryan, No. 09-2386, 2010 WL 5872523 at *14 (D.Ariz. Dec. 2, 2010), adopted by, 2011 WL 744899 (D.Ariz. Feb. 25, 2011)[finding "that even if state law did render the statutory changes retroactive to Petitioner's case, an alleged violation of a state's own criminal law does not present a cognizable federal habeas claim."].

Therefore, Petitioner has not shown that the findings and rulings of the state courts were unreasonable.  Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington,

---

[8](...continued)
justice" test holds that relief is appropriate only where the applicant presents evidence showing that 1) the newly discovered evidence was discovered after the entry of the plea and, in the exercise of reasonable diligence, could not have been discovered prior to the entry of the plea, and 2) the newly discovered evidence is of such a weight and quality that, under the facts and circumstances of that particular case, the "interest of justice" requires the applicant's guilty plea to be vacated.  See Court Docket No. 19-12, pp. 11-12.



supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems', and not as a means of error correction"].  These claims should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 18, 2016
Charleston, South Carolina



20

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

